Laurie Edelstein (Bar No. 164466)
Seth R. Sias (Bar No. 260674)
STEPTOE & JOHNSON LLP
1891 Page Mill Road, Suite 200
Palo Alto, California 94304
Telephone: (650) 687-9500
Facsimile: (650) 687-9499
ledelstein@steptoe.com
ssias@steptoe.com

Michael Baratz (*pro hac vice* application filed concurrently)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone:  (202) 429-3000
Facsimile:   (202) 429-3902
mbaratz@steptoe.com

*Attorneys for Plaintiffs iFinex Inc., BFXNA Inc., BFXWW Inc., and Tether Limited*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IFINEX INC., BFXNA INC., BFXWW INC., and TETHER LIMITED,<br><br>                Plaintiffs,<br><br>     v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A.,<br><br>                Defendants. | No. 17 Civ. 1882<br><br>**DECLARATION OF MICHAEL BARATZ IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATON FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

# DECLARATION OF MICHAEL BARATZ

I, Michael J. Baratz, declare as follows:

1. I am a partner in the Washington, D.C., office of Steptoe & Johnson LLP. I have personal knowledge of the matters stated in this Declaration by virtue of my representation of plaintiffs iFinex Inx. ("iFinex"), BFXNA Inc. ("BFXNA"), BFXWW Inc. ("BFXWW"), and Tether Limited ("Tether") (collectively ,"plaintiffs"), in the above-captioned matter. I could and would competently testify to the following matters if called as a witness in this action.

2. Plaintiffs iFinex, BFXNA, and BFXWW (collectively, "Bitfinex") own and operate a global trading platform for Virtual Currency, an emerging form of digital currency.[1] Tether owns and operates a digital platform that allows customers to store, send, and make purchases using tethers, which are backed by U.S. dollars on deposit from customers. Plaintiffs deposit their customers' money at Taiwan-Based Banks. Currently, Bitfinex and Tether can receive or remit only U.S. dollars for customers' purchases on their platforms. It is my understanding that Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo") has been the correspondent bank for these Taiwan-Based Banks and has processed U.S. dollar wires from these Taiwan-Based Banks that allow plaintiffs to remit back to their customers the U.S. dollars the customers have deposited with plaintiffs.

3. Last week, plaintiffs informed Steptoe & Johnson LLP that Wells Fargo had stopped performing correspondent bank services and suspended the processing of wire transfers from the Taiwan-Based Banks on which plaintiffs rely to transfer funds between plaintiffs and their customers. Plaintiffs asked Steptoe to help them work with Wells Fargo to address any concerns it had about providing those services so that Wells Fargo would resume processing the wire transfers as it had in the past.

4. Since that time, plaintiffs, through their attorneys at Steptoe, have worked diligently to communicate with Wells Fargo regarding its decision to suspend the processing of wire transfers from plaintiffs' Taiwan-Based Banks.

---

[1] All capitalized terms have the same meaning as set forth in the Complaint.

5. On March 31, 2017, Steptoe Chairman Phillip West sent an email to Jimmie Paschall, an Executive Vice President of Wells Fargo, seeking an introduction to Wells Fargo's Chief Compliance Officer so that he could discuss with her Wells Fargo's decision to suspend the processing of these wire transfers. A true and correct copy of Mr. West's email is attached hereto as Exhibit 1.

6. On the same day, Steptoe partner Jason Weinstein had a telephone conversation with Jonathan Rusch, Senior Vice President, Head of Anti-Bribery & Corruption Governance at Wells Fargo, to seek further clarification about Wells Fargo's decision. A true and correct copy of an email exchange between Mr. Weinstein and Mr. Rusch is attached hereto as Exhibit 2.

7. The next day, April 1, 2017, Ms. Paschall connected Mr. West with Wells Fargo's Chief Compliance Officer, Yvette Hollingsworth Clark. A true and correct copy of Ms. Paschall's email is attached hereto as Exhibit 3.

8. The same day, Mr. West wrote to Ms. Hollingsworth Clark to seek further clarification about Wells Fargo's decision. Mr. West explained that Wells Fargo's decision "could significantly affect our client's ability to operate in USD by next Tuesday," April 4. Mr. West offered to "submit information directly to Wells Fargo about the situation" and to meet with Wells Fargo to "explain Bitfinex's case and address any questions Wells Fargo may have." A true and correct copy of Mr. West's email is attached hereto as Exhibit 4.

9. Ms. Hollingsworth Clark responded on April 2 that she could "only engage in discussions with the client regarding their activities with Wells Fargo." A true and correct copy of Mrs. Hollingsworth Clark's email is attached hereto as Exhibit 5.

10. On the same day, Steptoe attorney Jack Hayes followed up with Ms. Hollingsworth Clark, stating that plaintiffs would provide the contact information for Wells Fargo's correspondent banks in Taiwan, but noted that these banks would be closed for holidays in Taiwan on Monday, April 3 and Tuesday, April 4. Mr. Hayes also informed Ms. Hollingsworth Clark that the matter was "urgent" because if Wells Fargo continued to suspend the processing of the wires on Wednesday morning (Taiwanese time), plaintiffs and their

BARATZ DECLARATION IN SUPP. OF TEMPORARY RESTRAINING ORDER   No. 17 Civ. 1882
AND OSC WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

2

STEPTOE & JOHNSON LLP
1891 Page Mill Road, Suite 200
Palo Alto, CA 94304

affiliates would be "significantly affected." A true and correct copy of Mr. Hayes' email is attached hereto as Exhibit 6.

11. On April 3, 2017, Mr. Hayes and Mr. Weinstein again sought to engage Wells Fargo by reaching out to Mr. Rusch and Ms. Ms. Hollingsworth Clark. True and correct copies of Mr. Hayes' and Mr. Weinstein's emails are attached hereto as Exhibit 7 and Exhibit 8.

12. Mr. Rusch and Ms. Hollingsworth Clark both responded later that day, stating that Wells Fargo would communicate only directly with its customers, presumably the Taiwan-Based Banks that Steptoe had informed Wells Fargo were closed for local holidays. True and correct copies of Ms. Hollingsworth Clark's and Mr. Rusch's emails are attached hereto as Exhibit 9 and Exhibit 10.

13. Mr. Hayes sent another e-mail to Ms. Hollingsworth Clark at 6:25 p.m. Eastern Time on April 3, 2017 asking for a clarification that Wells Fargo's position that it would only communicate with its customers meant that it would only communicate with the Taiwan-based banks. Mr. Hayes explained Steptoe's understanding that Wells Fargo had due diligence concerns not about the Taiwan-Based Banks but about their customer Bitfinex, Steptoe's client. Mr. Hayes again explained the "serious threat this situation presents to the continuation of our client's business" and offered to "work with Wells Fargo to provide all necessary information and address any due diligence concerns." Mr. Hayes added that while Bitfinex's "strong preference is to work collaboratively with Wells Fargo to resolve this matter so that our client can continue operating its business," Bitfinex would need to consider "all available remedies" given the "grave threat to our client's business." A true and correct copy of Mr. Hayes' email is attached hereto as Exhibit 11.

14. When Steptoe did not receive a response to Mr. Hayes' April 3 email, given the threat to plaintiffs' business, on April 4, 2017 at 12:00 p.m. Eastern Time, Mr. Hayes sent another e-mail to Ms. Hollingsworth Clark, informing her that if Wells Fargo did not respond, plaintiffs would pursue relief in court. Mr. Hayes offered to continue communicating with Ms. Hollingsworth Clark or to work with any in-house or outside counsel for Wells Fargo. Mr. Clark

STEPTOE & JOHNSON LLP
1891 Page Mill Road, Suite 200
Palo Alto, CA 94304

1  reiterated that "we would be grateful for an opportunity to present information about Bitfinex

2  and undertake immediately a short term arrangement to resume in and out USD wire transfer

3  activity at the relevant banks in Taiwan." A true and correct copy of Mr. Hayes' email is

4  attached hereto as Exhibit 12.

5       15.   On April 4, 2017, Robert McGahan, Wells Fargo's Assistant General Counsel –

6  General Litigation and Enforcement, e-mailed Mr. Hayes to schedule a meeting. A true and

7  correct copy of Mr. McGahan's email is attached hereto as Exhibit 13.

8       16.   Mr. McGahan's email did not arrive in Mr. Hayes' inbox until 4:23 a.m. Eastern

9  Time on April 5, 2017. A true and correct copy of a screenshot of Mr. Hayes' e-mail inbox is

10 attached hereto as Exhibit 14. The email chain reflects it may have been sent in the afternoon of

11 April 4, but it was not received until early morning on April 5.

12      17.   On April 5, 2017, plaintiffs' attorneys e-mailed Mr. McGahan at 6:12 a.m.

13 Eastern Time, seeking to schedule their meeting by 12:00 p.m. Eastern Time and informed Mr.

14 McGahan that plaintiffs were preparing to file the instant action in the morning Pacific Time if

15 the parties could not reach an interim resolution. A true and correct copy of Mr. Hayes' email is

16 attached hereto as Exhibit 15.

17      18.   Mr. McGahan responded that he was on a flight until the early part of the

18 afternoon on April 5, 2017 and referred plaintiffs' attorneys to Wells Fargo's outside counsel,

19 McGuire Woods LLP. A true and correct copy of Mr. McGahan's email is attached hereto as

20 Exhibit 16.

21      19.   Plaintiffs' attorneys e-mailed Wells Fargo's attorneys at McGuire Woods LLP at

22 7:13 a.m. Eastern Time on April 5, 2017. A true and correct copy of Mr. Hayes' email is

23 attached hereto as Exhibit 17.

24      20.   Plaintiffs' attorneys and Wells Fargo's attorneys had a teleconference at 7:00 a.m.

25 Pacific Time to discuss the matter. The telephone conversation ended with Wells Fargo's

26 attorneys' representation that they would communicate with Wells Fargo and provide a response

27 this morning Pacific Time. Plaintiffs' attorneys reiterated plaintiffs' preference to work out a

28

short-term arrangement to allow wire transfers to continue being processed without Court intervention, but indicated they remained ready and willing to seek the instant temporary restraining order if necessary. Wells Fargo's attorney expressed an interest in appearing with plaintiffs' attorneys in Court.

21. Plaintiffs' attorneys spoke again with Wells Fargo's counsel at 11:53 a.m. Pacific Time. Wells Fargo's counsel confirmed that Wells Fargo had instructed the Taiwan-Based Banks that Wells Fargo would not accept any more outgoing wire transfers from plaintiffs' accounts. He explained that Wells Fargo will not service wires that relate to Virtual Currency. Wells Fargo's counsel also informed plaintiffs that Wells Fargo is not interested in meeting with plaintiffs or exploring any additional due diligence.

22. Due to the imminent threat of harm to plaintiffs and Wells Fargo's failure to resolve this issue with plaintiffs without court intervention, plaintiffs are moving the United States District Court for the Northern District of California for immediate injunctive relief. Plaintiffs have taken all reasonable steps to inform Wells Fargo of their concerns and of the threat of harm they face based on Wells Fargo's decision. That threat of harm is detailed more fully in plaintiffs' Complaint, plaintiffs' *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, and supporting papers, which are being filed concurrently herewith.

23. Plaintiffs will email a copy of plaintiffs' Complaint and their *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue to Wells Fargo's outside counsel, McGuire Woods LLP, after plaintiffs filing them with the Court.

1. I declare under penalty of perjury under the laws of the United States that the foregoing is
2. true and correct. Executed on April 5, 2017 at San Francisco, California.

Dated: April 5, 2017

_____
Michael J. Baratz

STEPTOE & JOHNSON LLP
1891 Page Mill Road, Suite 200
Palo Alto, CA 94304